UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TOVARITCH SPIRITS INTERNATIONAL SA, | ) ) ) |
| Plaintiff(s), | ) ) |
| vs. | ) ) |
| LUXCO, INC., | ) ) ) |
| Defendant(s). | ) |

Case No. 4:11CV950 JCH

**MEMORANDUM AND ORDER**

This matter is before the Court following a bench trial conducted on November 19 and 20, 2012. Having considered the pleadings, trial briefs, exhibits, and proposed findings of fact and conclusions of law submitted by the parties, the Court hereby makes and enters the following findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

**FINDINGS OF FACT**

1.     Plaintiff Tovaritch Spirits International SA ("Plaintiff" or "Tovaritch") is a corporation organized and existing under the laws of Switzerland with its principal place of business located at Rue de Rhone 100, Geneve 3, Switzerland 1211.  Plaintiff is a manufacturer and exporter of Russian vodka.

2.     Defendant Luxco, Inc. ("Defendant" or "Luxco") is a manufacturer, marketer, distributer, and seller of spirits and alcoholic beverages throughout the United States.

3.     The TOVARITCH brand of vodka is made in St. Petersburg, Russia, and currently is exported to 28 countries around the world.

4.     The word TOVARITCH means "comrade" in Russian.

5. The first bottle of TOVARITCH vodka was bottled in 1999.

6. Defendant is the owner of U.S. Trademark Registration No. 1,036,350 for the trademark TVARSCKI for vodka and gin. Defendant's predecessor-in-interest, the David Sherman Corporation ("DSC"), acquired the TVARSCKI trademark in 1987. The TVARSCKI trademark was registered on March 23, 1976, based on first use and first use in commerce on December 31, 1959.

7. DSC changed its name to Luxco, Inc., at the end of 2005 or the beginning of 2006.

8. Defendant is also the owner of U.S. Trademark Registration No. 1,161,228 for the trademark TV for vodka. DSC had acquired the TV trademark in 1987. The TV trademark was registered on July 14, 1981, based on first use and first use in commerce on December 31, 1959.

9. DSC had also acquired U.S. Trademark Registration No. 411,825 for the trademark TOVARISCH in 1987, but Defendant decided against selling vodka under the TOVARISCH trademark because it thought the trademark was too close to Defendant's TVARSCKI trademark.

10. Generally, Defendant sells vodka and other spirits with the TVARSCKI trademark to distributors or wholesalers, who in turn sell to retailers, who in turn sell to consumers. Defendant does not sell vodka with the TVARSCKI trademark directly to consumers.

11. Non-vodka spirits make up a small percentage of the total sales of the TVARSCKI brand.

12. TVARSCKI vodka is sold currently, on average, for $7.99-$9.99 for a 750 mL bottle and for $15.00-$16.99 for a 1.75 L bottle.

13. TVARSCKI vodka is sold in nineteen states.[1] TVARSCKI vodka is a regional brand primarily sold in the Midwest and the middle South.

---

[1] As of February 2012, TVARSCKI is sold in the following states: Alabama, Arkansas, Colorado, Idaho, Illinois, Kansas, Kentucky, Minnesota, Missouri, Montana, Nebraska, Oklahoma, Pennsylvania, South Dakota, Tennessee, Texas, Wisconsin, West Virginia, and Wyoming.

14. TVARSCKI vodka is produced in St. Louis, Missouri.

15. Defendant sells TVARSCKI vodka in 80 proof, 90 proof, 100 proof, and "light." Defendant also sells TVARSCKI vodka in the following flavors: black raspberry, cherry, grape, lemon, orange, and peppermint.

16. In 2009, Defendant's gross sales for the TVARSCKI brand were $7.97 million. In 2010, Defendant's gross sales for the TVARSCKI brand were $7.85 million. In 2011, Defendant's gross sales for the TVARSCKI brand were $7.97 million. These totals include all sales from all TVARSCKI spirits products.

17. The TVARSCKI brand constitutes approximately five percent of Defendant's business.

18. The name "TVARSCKI" has no apparent meaning or connection to vodka.

19. Plaintiff became aware of the TOVARISCH trademark in the United States in 2000 while conducting research into the global market concerning the name TOVARITCH.

20. On June 23, 2000, Eugenio Litta, the founder and CEO of Plaintiff, contacted DSC to inquire about purchasing the TOVARISCH trademark.

21. At the time that Mr. Litta contacted DSC, Defendant did not have a vodka product on the market that used the TOVARISCH trademark.

22. The parties did not arrive at an agreement for the sale of the TOVARISCH trademark.

23. In May or June 2001, Plaintiff filed a petition for cancellation of the TOVARISCH trademark with the United States Patent and Trademark Office ("USPTO").

24. On June 26, 2001, Plaintiff filed an application to register the trademark TOVARITCH with the USPTO.

25. On May 31, 2005, DSC voluntarily withdrew its registration for the TOVARISCH trademark.

26. On January 9, 2007, the USPTO issued U.S. Trademark Registration No. 3,197,190 for the trademark TOVARITCH for vodka.

27. On March 9, 2007, Defendant initiated a cancellation proceeding before the Trademark Trial and Appeal Board ("TTAB") seeking to cancel the TOVARITCH registration.

28. On March 24, 2011, the TTAB ordered the cancellation of U.S. Trademark Registration No. 3,197,190 for the trademark TOVARITCH in Cancellation No. 92047201.  The TTAB found a likelihood of confusion exists between Plaintiff's TOVARITCH mark and Defendant's TVARSCKI trademark.

29. The TTAB also rejected Plaintiff's laches argument, finding there was no evidence of 1) clear notice to Defendant that Plaintiff intended to begin to use the TOVARITCH mark in the United States, 2) Defendant's awareness that Plaintiff would file a registration with the USPTO, nor 3) Plaintiff's use of the TOVARITCH mark in the United States.  Thus, the TTAB found that Plaintiff did not establish undue delay by Defendant in filing Cancellation No. 92047201 nor any prejudice to Plaintiff due to any alleged delay.

30. Plaintiff filed its Complaint in this Court on May 24, 2011, for judicial review of the decision of the TTAB in Cancellation No. 92047201.

31. In its Complaint, Plaintiff argues the TTAB erroneously concluded that 1) TOVARITCH and TVARSCKI are confusingly similar, and 2) Defendant's claim is not barred by laches.

32. Defendant filed counterclaims in this action, alleging Plaintiff's continued sale of TOVARITCH vodka constitutes federal trademark infringement under 15 U.S.C. § 1114, unfair competition under 15 U.S.C. § 1125(a)(1), trademark infringement and unfair competition under Missouri law, and trademark dilution under Missouri law.

33. The only remedy sought by Defendant for the violations alleged in Defendant's counterclaims is a permanent injunction.

34. Plaintiff's current and only importer for TOVARITCH vodka in the United States is W.J. Deutsch & Sons.

35. Plaintiff's previous importer was Rose Importing. Plaintiff signed a distribution agreement with Rose Importing on February 15, 2006, identifying the territory for the distribution of TOVARITCH vodka as the states of Illinois, Michigan, Ohio, Georgia, and Texas.

36. In September 2012, Defendant's President and CEO, Donn Lux, first saw TOVARITCH vodka offered for sale in a store in the United States. At that time, Mr. Lux saw TOVARITCH vodka offered for sale in a Total Wine store in California.

37. Total Wine is a national retailer that offers in-store wine and spirits sales as well as sales over the Internet.

38. In the United States, TOVARITCH vodka is sold currently, on average, for $9.99-$10.99 for a 750 mL bottle.

## CONCLUSIONS OF LAW

1. Plaintiff filed its Complaint for judicial review of the decision of the TTAB in Cancellation No. 92047201, and this Court has subject matter jurisdiction over this appeal pursuant to 15 U.S.C. § 1071(b)(1) and 28 U.S.C. § 1331.

2. Defendant filed counterclaims alleging violations of the Federal Trademark Act of 1946 ("the Lanham Act") and Missouri law. This Court has jurisdiction over Defendant's counterclaims for trademark infringement and unfair competition under 15 U.S.C. §§ 1114 and 1125 and 28 U.S.C. § 1331, and this Court has supplemental jurisdiction over Defendant's state-law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) and 15 U.S.C. § 1071(b)(1).

**A.      TTAB Decision**

4. After the TTAB has issued an opinion, the Lanham Act provides the disfavored party with two avenues of appeal: the party may either appeal directly to the United States Court of Appeals for the Federal Circuit or to any federal district court having jurisdiction over the parties. See 15 U.S.C. § 1071(b).

5. "An appeal to the Federal Circuit is an appeal of record, meaning that the Federal Circuit may not consider any new evidence and must decide the case on the same record that was before the TTAB." Hope Hamilton, Note, *Parsing the Standard of Review Puzzle: How Much Deference Should Federal District Courts Afford Trademark Trial and Appeal Board Decisions?*, 12 FED. CIR. B.J. 489, 493 (2002) (citation omitted); see also Bd. of Regents of University of Wisconsin Sys. v. Phoenix Intern. Software, Inc., 653 F.3d 448, 451-52 (7th Cir. 2011) ("The road not taken by Wisconsin was a direct appeal to the Federal Circuit, which would have been restricted to the record developed before the TTAB....").

6. "In contrast to appeals to the Federal Circuit, the Lanham Act expressly allows appellants of TTAB decisions appealing to a federal district court to present new evidence, as well as bring additional claims that were outside of the TTAB's jurisdiction." Hamilton, supra, at 497 (citation omitted); see also Phoenix Intern. Software, 653 F.3d at 451-52 ("The option Wisconsin chose was a new action in the district court. One advantage of this path for the state was the ability to expand the record by offering new evidence to fend off Phoenix's cancellation claim.").

7. In Dickinson v. Zurko, 527 U.S. 150, 152 (1999), the United States Supreme Court held that, in the context of the review of a decision of the Patent and Trademark Office ("PTO") in the Federal Circuit, the Federal Circuit was to apply the standard of review articulated in the Administrative

Procedure Act ("APA"). Although the Supreme Court in Zurko left open which of the APA's review standards was appropriate, the Federal Circuit has since concluded that the APA's "substantial evidence" test is the appropriate review standard for the PTO's findings of fact. In re Gartside, 203 F.3d 1305, 1315 (Fed. Cir. 2000). In addition, the Federal Circuit has concluded that despite the fact that Zurko involved the Federal Circuit's review of a decision of the PTO, the Supreme Court's holding is applicable to findings of fact made by the TTAB. Recot, Inc. v. Becton, 214 F.3d 1322, 1327 (Fed. Cir. 2000).

8. Since Zurko only applied to review by the Federal Circuit, courts have been divided on the question of whether a district court uses the APA "substantial evidence" standard of review for the TTAB's fact-finding or the previous "thorough conviction" standard set out by the Supreme Court in Morgan v. Daniels, 153 U.S. 120 (1894). See, e.g., Mazzari v. Rogan, 323 F.3d 1000, 1005 (Fed. Cir. 2003) ("Therefore, a reviewing court, whether this court or the district court, applies the 'substantial evidence' standard of review to findings of fact made by the board."); CAE, Inc. v. Clean Air Engineering, Inc., 267 F.3d 660, 675 n.9 (7th Cir. 2001) ("Furthermore, whether the aggrieved party elects direct review by the Federal Circuit or initiates a new action in the district court, both courts should apply the APA standard of review to the TTAB's fact-finding."); but see Scimed Life Sys., Inc. v. Medtronic Vascular, Inc., 468 F.Supp.2d 60, 65 (D.D.C. 2006) ("[T]his Court will apply the standard of proof set forth in Morgan v. Daniels, in that when a decision has been made by the Patent Office in an action contesting priority of invention, 'the decision there made must be accepted as controlling upon that question of fact in any subsequent suit between the same parties, unless the contrary is established by testimony which in character and amount carries thorough conviction.'"); U.S. Filter Corp. v. Ionics, Inc., 68 F.Supp.2d 48, 52 (D.Mass. 1999) ("I do not accept defendant's

argument that Zurko has changed the standard of review that this court must apply in reviewing the PTO's finding of a valid patent.")

9. The Court finds that, in light of the Supreme Court's decision in Zurko, it should apply the APA's "substantial evidence" standard when reviewing the TTAB's factfinding. See Clean Air Engineering, 267 F.3d at 675; see also 3 McCarthy on Trademarks and Unfair Competition § 22:22.50 (4th ed. 2012) ("While the Zurko decision on its facts only concerned Federal Circuit review of PTO factual determinations, in the author's opinion it should also apply to district court review of the same determinations."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). The Court reviews *de novo* the TTAB's decisions regarding the appropriate legal standards to apply to a case. Pro-Football, Inc. v. Harjo, 284 F.Supp.2d 96, 118 (D.D.C. 2003). The Court reviews new evidence not presented to the TTAB under a preponderance of the evidence standard. See Zurko, 527 U.S. at 164 ("The presence of such new or different evidence makes a factfinder of the district judge. And nonexpert judicial factfinding calls for the court/court standard of review.").

10. The Court has reviewed the record from the TTAB decision, as submitted by the parties through the Joint Appendix, along with additional evidence submitted by the parties on November 19 and 20, 2012, and finds that the TTAB's decision is supported by substantial evidence. See Clean Air Engineering, 267 F.3d at 676; Wynn v. U.S. Patent and Trademark Office, 185 F.Supp.2d 785, 790 (E.D. Mich. 2002).

11. Under the facts of this case, the Court finds the application of the "thorough conviction" standard would not have produced a different result. See Clean Air Engineering, 267 F.3d at 676 (noting that although the district court incorrectly applied the "thorough conviction" standard and

"did not formally apply the substantial evidence standard now required by Zurko, the court applied that standard in substance, and it did not commit reversible error with respect to the standard of review").

12.     The TTAB properly based its decision that there was a likelihood of confusion between the trademarks for TOVARITCH and TVARSCKI on an analysis of the following factors set out in In re E.I. du Pont de Nemours & Co., 476 F.2d 1357, 1361 (C.C.P.A. 1973): the fame of the prior mark (sales, advertising, length of use); the similarity or dissimilarity of established, likely-to-continue trade channels; the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression; the number and nature of similar marks in use on similar goods; and the nature and extent of any actual confusion.

13.     The Court finds the TTAB properly determined that Defendant failed to provide sufficient context to determine the strength of the TVARSCKI mark; that Plaintiff and Defendant's products overlap, are in-part identical, and travel in the same channels of trade with the same classes of purchasers; that both marks have "a Russian 'look and feel,'" will be pronounced comparably by consumers, and have similarities that outweigh any dissimilarities; that the third-party spirits products cited by Plaintiff are insufficient to show adequate widespread third-party use of similar marks; and that, while Defendant presented no evidence of actual confusion, there is insufficient evidence that both marks have been used in the same markets.  Thus, the TTAB properly determined that there was insufficient evidence as to the first du Pont factor, that the second and third du Pont factors weighed in favor of Defendant, and that the fourth and fifth du Pont factors were neutral.  The TTAB properly found that, taken together, the du Pont factors weighed in favor of Defendant.

14.     The Court also finds the TTAB did not apply the incorrect burden of proof in arriving at its decision.  The burden is on the petitioner in a trademark cancellation proceeding to show by a

preponderance of evidence that it is or will be damaged by continued registration of the mark. Dep't of Justice, F.B.I. v. Calspan Corp., 578 F.2d 295, 300-01 (C.C.P.A. 1978); see also 4A Callmann on Unfair Comp., Tr. & Mono. § 26:71 (4th ed. 2012) ("Older authority holds that a much heavier burden of proof should be imposed upon the petitioner in a cancellation proceeding than upon the opposer in an opposition proceeding....However, the modern rule is that the burden in both cancellation and opposition proceedings is a preponderance of the evidence."). "In oppositions (**but not cancellations**) based on likelihood of confusion, the Board follows the rule of doubt; when in doubt as to the proper outcome, the Board sustains the opposition." 4A Callmann on Unfair Comp., Tr. & Mono. § 26:88 (4th ed. 2012) (emphasis added).

15.   In its decision, the TTAB did not explicitly state what burden of proof it was employing. Nevertheless, in weighing the relevant du Pont factors, the TTAB found that two of the du Pont factors weighed in favor of Defendant, two of the du Pont factors were neutral, and insufficient evidence was presented by Defendant as to another du Pont factor.  Thus, although the TTAB stated in its decision that it "[r]esolv[ed] doubt in favor of petitioner as the prior registrant, which we must," it is clear the TTAB's balancing of the du Pont factors resulted in its determination, by a preponderance of the evidence, that the marks at issue are similar enough to support a finding of likelihood of confusion.

16.   To prevail on its affirmative defense of laches before the TTAB, Plaintiff needed to establish undue or unreasonable delay by Defendant in asserting its rights and that prejudice to Plaintiff resulted from that delay. Bridgestone/Firestone Research, Inc. v. Auto. Club De L'Quest De La France, 245 F.3d 1359, 1361 (Fed. Cir. 1993).

17.   The TTAB properly found that there was no undue delay by Defendant in pursuing the cancellation of the TOVARITCH registration two months after rights were secured in the

TOVARITCH trademark and that Plaintiff did not allege nor show any prejudice as a result of any alleged undue delay. Thus, the TTAB properly found that Plaintiff failed to establish a claim of laches.

18. The new evidence presented to the Court that was not before the TTAB does not change the Court's determination that the TTAB's decisions on likelihood of confusion and laches were proper.

### B.  Counterclaims

#### 1.  Trademark Infringement under 15 U.S.C. § 1114, Unfair Competition under 15 U.S.C. § 1125(a), and Trademark Infringement and Unfair Competition under Missouri Law

19. Under 15 U.S.C. § 1114, any person who, without the consent of the registrant,

> (a) use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce[s], counterfeit[s], cop[ies], or colorably imitate[s] a registered mark and appl[ies] such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant.

20. Under 15 U.S.C. § 1125(a)(1), a person or organization shall be civilly liable for engaging in unfair competition if

> in connection with any goods or services, or any container for goods, [the person or organization] uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

21. Given the facts of this case, the elements of Defendant's two claims under §§ 1114 and 1125(a)(1) are substantially the same. See Comty. of Christ Copyright Corp. v. Devon Park

- 11 -

Restoration (*Devon Park I*), 683 F.Supp.2d 1006, 1013 (W.D. Mo. 2010).  Accordingly, Defendant must demonstrate that 1) it owns or has rights in a protectable trademark or tradename; and 2) Plaintiff has used, in commerce, a similar mark that is likely to cause confusion as to the source of Plaintiff's goods or the involvement or association of Defendant with Plaintiff's business or activities. Id.  The Eighth Circuit has consistently used the following six factors to evaluate the likelihood of confusion in trademark cases: 1) the strength of the owner's mark; 2) the similarity of the owner's mark and the alleged infringer's mark; 3) the degree to which the products compete with each other; 4) the alleged infringer's intent to "pass off" its goods as those of the trademark owner; 5) incidents of actual confusion; and 6) the type of product, its costs, and conditions of purchase.  Comty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church (*Devon Park II*), 634 F.3d 1005, 1013-14 (8th Cir. 2011) (citing Kemp v. Bumble Bee Seafoods, Inc., 398 F.3d 1049, 1053 (8th Cir. 2005)).  "No one factor controls, and because the inquiry is inherently case-specific, different factors may be entitled to more weight in different cases." Id. (quoting Kemp, 398 F.3d at 1054).

22. The elements of claims under Missouri law for trademark infringement and unfair competition substantially overlap with federal trademark claims.  Steak n Shake Co. v. Burger King Corp., 323 F.Supp.2d 983, 991 (E.D. Mo. 2004); see also Devon Park II, 634 F.3d at 1010 ("Missouri law 'is well settled that the same facts which support a suit for trademark infringement support a suit for unfair competition' and common law infringement.").

23. The Court finds that Defendant has established the strength of its trademark, sufficient similarity between its mark and Plaintiff's mark, the competitive proximity of the parties' products, and the degree of care reasonably expected of Defendant's potential customers due to the type of Defendant's product, its costs, and its conditions of purchase so as to weigh those factors in favor

of Defendant. The Court finds no evidence of Plaintiff's intent to confuse the public and no evidence of any actual confusion and, therefore, finds those factors to be neutral. See Devon Park II, 683 F.Supp.2d at 1015. Balancing the relevant factors, the Court finds there is a likelihood of confusion between TOVARITCH and TVARSCKI under §§ 1114 and 1125(a)(1) and that Defendant has established its claims under Missouri law for trademark infringement and unfair competition.

### 2.     Trademark Dilution under Missouri Law

24.    Under MO. REV. STAT. § 417.061, injunctive relief is available where there exists a "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark...notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." "The gravamen of a dilution complaint is that the defendant's continuing use of a mark similar to the plaintiff's mark will inexorably have an adverse effect upon the value of the plaintiff's mark, and that the plaintiff's mark will eventually be deprived of all distinctiveness." Sensient Techs. Corp. v. SensoryEffects Flavor Co., 613 F.3d 754, 769 (8th Cir. 2010). To prevail under the statute, the plaintiff must show that its mark or trademark was valid at common law, that its mark is distinctive, and that the defendant's use of its name created a likelihood of dilution of the distinctive quality of the plaintiff's mark. Id.

25.    The Court finds that Defendant has shown that its trademark is valid and that its mark is distinctive. Additionally, because there is a likelihood of confusion, Defendant has shown that Plaintiff's use of its mark creates a likelihood of dilution. Devon Park II, 634 F.3d at 1010; see also Devon Park I, 683 F.Supp.2d at 1017 ("Defendants' continued use of the marks-in-suit will adversely affect the distinctiveness of those marks, thereby causing members of the public to have difficulty distinguishing Defendants' services from Plaintiffs' services."). Thus, Defendant has established its claim under Missouri law for trademark dilution.

26. Finally, the Court finds Plaintiff has not proven its affirmative defenses of laches, waiver, and estoppel, and Plaintiff's affirmative defenses do not preclude Defendant's counterclaims.

### 3. Permanent Injunction

27. To establish entitlement to a permanent injunction, Defendant must show the following: 1) its actual success on the merits; 2) that it faces irreparable harm; 3) that the harm to it outweighs any possible harm to others; and 4) that an injunction serves the public interest. Devon Park II, 634 F.3d at 1010 (citing Bank One, Utah v. Guttau, 190 F.3d 844, 847 (8th Cir. 1999)).

28. As discussed above, Defendant succeeded on the merits of its federal and state law claims. Additionally, Defendant faces irreparable harm from Plaintiff's use of the TOVARITCH mark because in trademark law, injury is presumed once a likelihood of confusion has been established. See id. Furthermore, the harm to Defendant in allowing Plaintiff to continue using the TOVARITCH mark would outweigh any possible harm to others, as the requested injunction will not prevent Plaintiff from entering the spirts market in the United States. Finally, an injunction will serve the public interest, as the public has an interest in the enforcement of valid trademarks and the right not to be deceived or confused as a result of the infringement of established marks. See Devon Park I, 683 F.Supp.2d at 1018. Thus, Defendant is entitled to exclusive use of its marks, and a permanent injunction will protect Defendant's interest.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that judgment is entered in favor of Defendant on Plaintiff's Complaint for *De Novo* Review of the Decision of the Trademark Trial and Appeal Board, and the cancellation of Plaintiff's TOVARITCH trademark is affirmed.

**IT IS FURTHER ORDERED, ADJUDGED and DECREED** that judgment is entered in favor of Defendant on its counterclaims for federal trademark infringement under 15 U.S.C. § 1114, unfair competition under 15 U.S.C. § 1125(a)(1), trademark infringement and unfair competition under Missouri law, and trademark dilution under Missouri law, and on its request for a permanent injunction.

**IT IS FURTHER ORDERED, ADJUDGED and DECREED** that, with respect to the permanent injunction, Plaintiff, including its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting under authority from Plaintiff, is **ENJOINED AND RESTRAINED** permanently from the following:

    A.    Manufacturing, distributing, marketing, selling, or offering for sale any goods which bear the TOVARITCH mark.

    B.    Committing any other act calculated or likely to cause the public to believe that Plaintiff or Plaintiff's products are, in any manner, connected, licensed, sponsored, affiliated, or associated with Defendant or from otherwise competing unfairly with Defendant.

**IT IS FURTHER ORDERED, ADJUDGED and DECREED** that Plaintiff will recall all products bearing the TOVARITCH mark which have been shipped by Plaintiff, or under Plaintiff's authority, to any customer, including but not limited to any wholesaler, importer, distributor, retailer, consignor, or marketer.


Dated this   21st   day of December, 2012.


                                        /s/Jean C. Hamilton
                                        UNITED STATES DISTRICT JUDGE